# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GEORGE R. CHAPMAN, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| **U.S. SECURITY ASSOCIATES,** ) | **JURY TRIAL DEMANDED** |
| **INC., and WATCO COMPANIES,** ) | |
| **L.L.C.,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, George R. Chapman, Jr., by and through his attorneys of record, and for his Complaint against Defendants, U.S. Security Associates, Inc. and Watco Companies, L.L.C., states as follows:

## NATURE OF THE CASE

1. This is a lawsuit brought by the Plaintiff, George R. Chapman, Jr., who has been affected by the discrimination alleged in the claims set forth below, seeking permanent relief from unlawful discriminatory practices involving the failure to remedy systemic employment discrimination on the basis of race. The practices committed by the Defendants violate the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The Defendants are both located and/or doing business within this judicial district and division. This action is brought within the judicial district wherein the unlawful employment practices were committed, western Jefferson County, Alabama, making venue proper under 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff, George R. Chapman, Jr. ("Plaintiff" or "Mr. Chapman"), is an adult resident domiciled in the state of Alabama.

5. Defendant U.S. Security Associates, Inc. (hereinafter "Defendant U.S. Security") is a Delaware corporation, which is located and doing business within this judicial district and division, specifically at Port Birmingham, Alabama, located in western Jefferson County, Alabama.  U.S. Security Associates, Inc. was an employer of Plaintiff at all times relevant herein within the meaning of 42 U.S.C. § 1981.

6. Defendant Watco Companies, L.L.C. (hereinafter sometimes referred to as "Defendant Watco") is a Delaware corporation, which is located and doing business within this judicial district and division, specifically at Port Birmingham, Alabama, located in western Jefferson County, Alabama.  For the relevant periods herein, and at the time of Plaintiff's termination, Defendant Watco owned and maintained the

premises upon which Plaintiff's employment occurred, and Defendant Watco exercised sufficient control over Defendant U.S. Security's personnel such that it is a joint employer within the meaning of 42 U.S.C. § 1981.

## STATEMENT OF FACTS

7. Plaintiff is a 43 year old African-American male.

8. On June 25, 2010, Plaintiff was employed by Defendant U.S. Security as a Security Officer, reporting to Daniel Carte, white male. His beginning salary was $8.25 per hour.

9. In 2011, Plaintiff's assignment was changed, and he was moved to Port of Birmingham in western Jefferson County, Alabama. He continued to report to Daniel Carte, and at that time he received an increase in pay to $10.00 per hour.

10. Plaintiff worked at the Port of Birmingham, which site was owned and/or controlled by Defendant Watco.

11. At the time of that transfer, Plaintiff was advised by Daniel Carte that Plaintiff should also "take orders from and listen to" Defendant Watco's General Manager, Jason Ford, white, as well as Defendant Watco's Operations Manager Kelly King, white, and its Safety Supervisor, Tim Sharitt, also white.

12. Plaintiff's duties centered around guarding the coal yard that contained heavy equipment for Defendant Watco.

13. Plaintiff also performed the duties of Defendant U.S. Security Associates' supervisor at the Port of Birmingham facility, but he was never promoted to the position. Plaintiff complained to Daniel Carte about not being promoted to a supervisory position throughout his tenure. Nonetheless, Carte did not promote Plaintiff.

14. On one occasion during his employment, Plaintiff's hours were provided to another employee, Raymond Harris, white. Jack King, white, who was Daniel Carte's manager, advised Plaintiff at the time that Harris was given preference over Plaintiff because of Harris's seniority over Plaintiff. When, a short time later, Harris died, Plaintiff was restored to his position.

15. Another Security Officer at the site, Charles Burton, white, had less seniority than Plaintiff. Burton was provided with an additional assignment, a "scale house" position, that allowed him to work 10 to 12 hours a day, which afforded Burton the ability to earn a great deal of overtime, whereas in Plaintiff's assignment, he had no opportunity to work overtime. When Plaintiff requested that he be allowed to work the same assignment as Burton and be afforded the ability to work overtime, the request was denied.

16. Burton knew that Plaintiff was upset about not getting the "scale house assignment," and he asked Plaintiff what he was going to do about being passed

over for the scale house position, Plaintiff replied that he was planning on going to the EEOC about it. Upon information and belief, Burton, whose son was an office employee in the Watco Office Building at the site, informed his son who in turn informed his supervisor, Defendant Watco General Manager Jason Ford, of this conversation.

17. Defendant U.S. Security's employee Charles Burton was provided access to all portions of the Birmingham Port facility. Mr. Burton was permitted access to the office building facilities and even prepared breakfast there in the kitchen of Watco Office Building, and he was also permitted special access to go fishing in the river in an area located behind the office building at the portion known as Crane 614. Watco management, including Jason Ford, Tim Sharitt, and Kelly King, authorized Burton's special access and use of the Watco facilities, and even authorized the keys to the Watco facility being given to Burton for his special access from time to time. Jason Ford had advised Charles Burton that it was fine for him to use the kitchen facilities in the Watco Office Building as long as he cleaned up after himself. Defendant U.S. Security was also aware of, and authorized, Mr. Burton's special use of its client Defendant Watco's building and port.

18. Plaintiff and his cousin, who was the only other African-American employee at the site, were not provided such access.

19. On April 11, 2013, Plaintiff's shift began at 3:00 p.m. in the afternoon. At around 4:00 p.m., there were severe thunderstorm warnings as well as acute threats of possible tornadoes in the area. The National Weather Service records indicatee that there were tornado swaths that moved through central Alabama during the afternoon and evening hours of April 11, 2013, and that there were also "several discrete super cells" that moved into central Alabama during that time period.

20. On the afternoon of April 11, 2013, Watco management radioed all Watco employees at the Port of Birmingham to take cover in the office building. Plaintiff was stationed in the guard shack on the site and it was not secure from storms. Plaintiff was a recipient of the radio communication from Watco management to take cover. As a result, Plaintiff went to the office building in the conference room to take cover from the storms that were moving through the area. He chose to position himself in the conference room as it provided him with a view of the critical areas that he would normally view from the guard shack.

21. Plaintiff remained in the office building only as long as necessary while the threat of tornadoes remained, and then he left and went back to his post.

22. While Plaintiff was in the office building, Watco General Manager Jason Ford approached him and stated, "What's the matter?  Are you afraid of lightning and thunder?"  Plaintiff responded that he was afraid of strong

6

thunderstorms in the area.

23. The following day, April 12, 2013, Plaintiff was called at home by Daniel Carte who informed Plaintiff that he was not to come into work because there was an investigation ongoing. Later that day, Plaintiff was advised by another Security Officer, Chris Armstrong, white, that Armstrong would be working Plaintiff's shift that evening.

24. Plaintiff also learned at that time that he was replaced by Kelly Wray, white, and that her designation was Supervisor, a title never provided to Plaintiff even though he performed all of the supervisory functions at the site for Defendant U.S. Security Associates, and even though he had repeatedly requested of Daniel Carte that he be made Supervisor.

25. Plaintiff was not returned to work and the reasons for his termination were a pretext for race discrimination and retaliation.

**COUNT ONE**
**42 U.S.C. § 1981- RACE DISCRIMINATION**
**(DEFENDANTS U.S. SECURITY ASSOCIATES, INC.**
**AND WATCO COMPANIES, LLC)**

26. Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

27. In taking the above-described actions, Defendants intentionally and

willfully discriminated against plaintiff due to his race, African-American, in violation of § 1981. Black employees and white employees were not treated similarly, including with regard to work assignments, discipline, consideration for promotions, titles, pay, overtime, terms and conditions of employment, and termination.

28. Defendants' actions were in violation of § 1981 and the XIII Amendment to the Constitution, and were taken with malice or reckless indifference to the federally-protected rights of Plaintiff.

29. As a proximate consequence of the violations of 42 U.S.C. § 1981 by Defendants, Plaintiff has suffered and will continue to suffer damage to his professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damage.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

    a. Placement in the position(s) in which he would have worked absent Defendants' discriminatory treatment; or, in lieu thereof, front pay;

    b. All back pay from the date of his wrongful termination;

    c. Injunctive relief;

    d. Pre-judgment interest;

    e.       Attorneys' fees;

    f.       Costs;

    g.       Compensatory damages for loss of wages, loss of benefits, including, but not limited to, retirement benefits, mental anguish, emotional distress, embarrassment, both past and future;

    h.       Punitive damages, to deter such conduct in the future; and

    i.       Such other legal or equitable relief as may be appropriate to effectuate the purposes of § 1981 and the XIII Amendment to the Constitution, or to which he may be entitled.

## COUNT TWO
## 42 U.S.C. § 1981- RETALIATION
## (DEFENDANTS U.S. SECURITY ASSOCIATES, INC. AND WATCO COMPANIES, LLC)

30.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

31.    In taking the above-described actions, Defendants intentionally and willfully retaliated against Plaintiff due to his protected activity of complaining of the treatment against him to his supervisors, in complaining of the failure to provide him with equal access to overtime and preferable assignments, and in stating his intent that he would take his claims to the EEOC.

32.    Actions taken by Defendants constituted retaliation against Plaintiff in violation of his federally-protected rights, including his right to voice complaints of

discrimination, which retaliation resulted in his termination.

33. Defendants' actions were in violation of § 1981 and Amendment XIII to the Constitution of the United States, and were taken with malice or reckless indifference to the federally-protected and Constitutional rights of Plaintiff.

34. As a proximate consequence of the violations of § 1981 by Defendants, Plaintiff has suffered and will continue to suffer damage to his professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damage.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

   a. Placement in the position(s) in which he would have worked absent Defendants' discriminatory treatment; or, in lieu thereof, front pay;

   b. All back pay from the date of his wrongful termination;

   c. Injunctive relief;

   d. Pre-judgment interest;

   e. Attorneys' fees;

   f. Costs;

   g. Compensatory damages for loss of wages, loss of benefits, including, but not limited to, retirement benefits, mental anguish, emotional distress, embarrassment, both past and future;

      h.      Punitive damages, to deter such conduct in the future; and

      i.      Such other legal or equitable relief as may be appropriate to effectuate the purposes of § 1981 and the XIII Amendment, or to which he may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

      **Respectfully submitted,**

      **/s/ Donna S. Cude**
      **John D. Saxon**
      **Alabama Bar No. ASB-3258-O71J**
      **Donna Smith Cude**
      **Alabama Bar No. ASB-7680-W18A**
      **Attorneys for Plaintiff**

**OF COUNSEL:**

**JOHN D. SAXON, P.C.**
2119 3rd Avenue North
Birmingham, Alabama 35203
Telephone:  205.324.0223
Facsimile:  205.323.1583
**Email:**     **jsaxon@saxonattorneys.com**
              **dcude@saxonattorneys.com**

**PLAINTIFF'S ADDRESS:**

**George R. Chapman, Jr.**
505 30th Street West
Jasper, Alabama 35501


**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED:**

**U.S. SECURITY ASSOCIATES, INC.**
C/o CT Corporation System, its registered agent
2 North Jackson St., Suite 605
Montgomery, AL 36104

**WATCO COMPANIES, L.L.C.**
C/o CSC Lawyers Incorporating Svc., Inc., its registered agent
150 South Perry Street
Montgomery, Alabama 36104